# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## JANUARY TERM, 1863.

———————

Erastus C. Belote, Respondent, *vs.* Mary Morrison and Wilson C. Morrison, Appellants.

#### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

Where an absolute deed of lands is taken by a lender of money as security for his loan, and a bond for a reconveyance given by him, conditioned upon the payment of the sum advanced, parol evidence will be admitted in equity to show the real nature of the transaction, and admit the borrower to redeem, upon proper allegations of fraud, coupled with damage, as the consequence of allowing the lender to enforce the deeds as they appear upon their face. The elements of fraud, mistake, accident, surprise, or some of the features which constitute the grounds of equitable interference in such matters, coupled with damage or injury, must always exist to authorize the exercise of equitable jurisdiction in such cases. The Court will not entertain cases of purely moral obligation, or correct unconscientious acts which are followed by no loss or damage.

The cases of *Pross vs. Dahl, 6 M. R.,* 89 ; *Yoss vs. De Frendenrich, Id.* 95 ; *and McClane vs White,* 5 *M. R.,* 178, commented on and explained.

## Points and Authorities of Appellants.

I.—The conveyance and bond constitute a mortgage merely,

and therefore the relief demanded in the complaint cannot be obtained.

II.—This is a¹ proceeding in equity, the answer being admitted to be true, the case stands in the same position of any other equity case, when the party admits the facts, and thereby all questions that the statute of frauds are intended to remedy, are removed.

III.—The facts and circumstances pleaded (and admitted) of themselves show that the deed was delivered and received as a mere security, and that the amount paid was intended and advanced as a loan, and that Plaintiff Belote is a mortgagee of the premises.

IV.—The answer shows that the conveyance to Belote, and Bond, were given, intended, and delivered as a security for a loan of money, and parol evidence is admissible in the case to show that such was the purpose, and so as to convert it into a mortgage. 1 *Hilliard on Mortgages*, 44; 4 *John. Ch.*, 167; 1 *Howard U. S.*, 118; 2 *Sumner*, 228; 9 *Wend.*, 227; 14 *Wend.*, 63; 1 *Paige*, 48; 2 *Cowen*, 324; 13 *Vermont*, 341; 7 *Dana*, 296; 10 *Yerger*, 375; 4 *Barr*, 178; 2 *Atkins*, 99, 268; 1 *Powell on Mort.*, 204; 16 *N. Y. R.*, 386; 8 *N. Y. R.*, 416; 2 *Story's Com.*, 318; 9 *Wheat.*, 489; 6 *John. Ch. R.*, 417; 2 *Cow. S. C.*, 246; 3 *J. J. Marshall*, 354; 2 *John. Ch.* 88; 2 *Cal.*, 421; 2 *Mumford*, 46; 1 *A. K. Marshall*, 176; 3 *J. J. Marshall*, 114; 2 *John. Ch.*, 88; 3 *Yerger*, 525; 1 *Dessaus*, 341; 1 *John. Ch. R.*, 594; 1 *Day*, 133; 1 *Paige Ch.*, 202; 14 *Peters U. S.*, 201; *Curtis Cond. R. vol.* 13, *p.* 422; 12 *How. U. S.*, 139; 19 *Curtis R.*, 68; 9 *Wheat.*, 489; 4 *Curtis Cond.*, 146; 6 *Humph.*, 99.

V.—The attempt on the part of Belote to convert a mere security into an absolute conveyance is a fraud upon Appellants, by the facts admitted, and an averment of the conclusions of law thence arising is not necessary. 1 *How. U. S.*, 118; 14 *Peters*, 201; 13 *Curtis Cond.*, 422; 12 *How. U. S.*, 139; 19 *Curtis, C. p.* 68; 9 *Wheaton*, 489; 6 *Curtis Cond.*, 146.

Points and Authorities for Respondents.

The Court below did not err in granting the order sustain-

Belote v. Morrison et al.

ing the demurrer. That portion of the Appellant's answer demurred to constituted no defence in the action ; because,

I.—The bond for a deed was a conditional sale of lands, and was not a mortgage ; nor does it contain any of the elements of a mortgage, nor has the obligee an equity of redemption thereunder of the lands specified in the bond. 4 *John. Ch. R.*, 559 ; 1 *Hill. on Mort.*, 61 ; 2 *do.*, 337.

II.—The execution, delivery and acceptance of the bond, and the default in the payment thereof, as alleged in the complaint, being admitted by the Appellants in their answer, and no fraud, accident, or mistake in the delivery or acceptance of the bond being averred, nor any excuse or justification of the default, the bond is " *functus officio.*" 4 *Johns. Ch. R.*, 559 ; 6 *Minn.*, 95.

III.—The pretended agreement and negotiations between Belote and Morrison rested in parole, and are void. Neither party could enforce such agreement. Evidence thereof is inadmissible, and the Appellant, Mary Morrison, the obligee in the bond, not being privy or a party to such agreement, evidence thereof is inadmissible in this action. *Col. Stat. Minn.*, 487, *sec.* 6 ; 5 *Minn.*, 247.

IV.—That portion of the answer demurred to sets up a parol agreement inconsistent with the terms of the bond. The bond, in this action, is absolute for the payment of a fixed sum of money, at a fixed time, as a condition precedent to the obligor's executing the conveyance named in the bond. Evidence of such parol agreement is inadmissible in this action. 1 *Cow. R.*, 250 ; 18 *Johns.*, 44.

V.—Nor is parol evidence admissible to show that this bond was intended (by the parties to it) as a mortgage security. Such parol evidence is only admissible in cases of fraud, accident or mistake, and then only in those cases where such fraud, accident or mistake is alleged in the pleadings. 5 *Minn. R.*, 178, *and cases cited ;* 1 *Hop. Ch. R.*, 133 *and* 134 ; 6 *Hill R.*, 219 ; 1 *Hill R.*, 19.

VI.—That portion of the answer demurred to sets up an agreement of date anterior to the execution and delivery of the bond. Such agreement was merged (if any there was) into the bond, or was extinguished by it, and parol evidence

Belote v. Morrison et al.

of such anterior agreement is inadmissible.   5 *Cow. R.*, 498, *and cases there cited.*

SMITH & GILMAN, Counsel for Appellants.

VAN ETTEN & OFFICER, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—The complaint in substance alleges that the Plaintiff was, on the 30th day of January, 1861, seized in fee simple and possessed of certain lands. That he bargained and sold the same to Mary Morrison, and executed and delivered to her a bond for a deed, in the penal sum of five thousand dollars, by which he agreed to convey the premises to her on the payment of a note of $2,000, executed by her and Wilson C. Morrison, on the same day with the bond, to wit, the 30th of January, 1861, and payable on or before the 26th day of May, 1861, and also on the payment of all taxes, &c., on the premises. That the Defendants have not paid the note nor the taxes; that the Defendants are insolvent ; that the bond is recorded, that Mary Morrison claims an equitable interest in the land under the bond ; that the Plaintiff has executed and tendered a deed demanding payment, and asks as relief that the bond be cancelled of record, and delivered up.

The answer set up that the land, on the 26th day of November, 1860, was the property of Wilson C. Morrison ; that a mortgage was upon the same, which was being foreclosed in the United States District Court, and the Defendant, Wilson C. Morrison, could not meet the demand, but applied to the Plaintiff for a loan for that purpose, and they agreed that as security for the loan, the Plaintiff should purchase in the property and take the master's deed in his own name, and execute the bond to the Defendant, Mary Morrison, for a sale upon the repayment of the money, both Defendants giving their note for the amount ; that the deed of the master was to be held merely as security for the loan, and that this arrangement was carried into effect. The transaction is set out with great particularity and fullness, showing clearly that the same amounted to a loan, and was so intended by the parties.   I merely state

an outline in brief of the allegations of the answer. The answer denies that the Plaintiff is entitled to the relief he seeks, and prays judgment for the Defendant.

The answer is demurred to by the Plaintiff.

Before proceeding to an examination of the question of whether the answer makes out a defence, I will state some things that do not appear in the answer. There is no allegation that the sum advanced by Belote was less than the full value of the land he purchased, nor any other circumstance or fact that shows that the Defendants would be in any way injured should the Plaintiff be allowed to retain the land, and the bond be ordered cancelled. The Defendants simply claim that the transaction, although in law is a conditional sale, is in equity a mortgage, and ask that the Plaintiff be turned out of Court. They do not aver tender of payment, or readiness or willingness to pay the sum due to the Plaintiff, nor do they ask any affirmative relief whatever, but simply insist that upon the facts alleged and admitted, the Plaintiff must fail in his action, and as a consequence be driven to some other form of action for his relief.

The Court below decided the demurrer well taken, upon the supposition principally, that the cases of *Pross vs. Dahl*, 6 *Minn.*, 89, *and Yoss vs. De Freudenrich*, *Id.* 95, were in point and controlling. We think the Court misapprehended the effect of those decisions. In the first named case the complaint was very similar to the one in the case at bar. The Defendant demurred to it on the ground that it disclosed a mortgage. We held that it was not a mortgage, and differed widely from such an instrument. That it was a sale of the land conditioned upon the payment of a sum of money. The relation of borrower and lender had never existed between the parties, and no loan had ever been made. The complaint, therefore, was not demurrable. There can be no similarity between that case and the one at bar, where the answer sets up a series of facts showing a loan, and that the Plaintiff never was the real owner of the land he pretended to sell, but received it under an arrangement by which he was to hold it merely as security, and the answer and not the complaint is demurred to. Had the Defendant in this case demurred to

the complaint, the case would have presented the same features as that of *Pross vs. Dahl.*

In the case of *Yoss vs. Freudenrich*, the complaint was in all substantial particulars similar to that in *Pross vs. Dahl.* The Defendant did not demur, but put in an answer which amounted to a statement that the times were so hard he could not meet his engagements, and asking delay. The answer was demurred to and held bad. It is true that in both these cases the Defendants insisted that the transactions, as alleged in the complaints, amounted in equity to mortgages, but they were in this respect mistaken, because they were in both cases clearly conditional sales, without a single element that goes to make up a mortgage. In the case at bar, however, the Defendant does not claim that the transaction, as disclosed by the complaint, is in equity a mortgage, but sets up facts affirmatively showing, as he claims, that the real agreement is not made apparent by the complaint, but by his facts alleged in the answer, and that such facts constitute a mortgage in equity. The questions in the cases commented upon and the one at bar are widely dissimilar in every respect, and the one can have no influence as authority upon the other.

The Court makes no reference to the case of *McClane vs. White*, 5 *Minn.*, *R.*, 178. But the counsel for the Defendant does, and endeavors to show that the language of the Court on the subject of the admissibility of parol evidence, to show that a deed, absolute in terms, was intended as a mortgage, is too broad when applied to a Court of Equity. The evidence offered in the case of *McClane vs. White*, to show that the Plaintiff held the title to the land as security only, although by an absolute conveyance, was shown by this Court to be immaterial, and properly rejected for that reason, because there was no allegation in the answer that the bond was *received* by the Plaintiff as a security only, but simply that Patrick Whalen had sold and assigned it to him as security, this Court holding that to make such a defence good, the allegation should be full that the Plaintiff had *received* and *accepted* it as security. That to make such a transaction a mortgage security, in contradiction of the written evidence of it, the understanding must have been mutual, and not merely upon the

part of the Defendant, or those under whom the Defendant claimed.

The Judge, who wrote the opinion, in a further discussion of the question of when such evidence is admissible, cites with approbation the case of *Webb vs. Rice*, 6 *Hill.*, 219, *p.* 188, as holding that "such evidence cannot be received in a court of law, nor even in a court of equity, except on the ground of fraud, mistake or surprise in making or executing the instrument," and also the case of *Stevens vs. Cooper*, 1 *Johns. Ch. R.*, 429, to the same effect, both of which cases go to the full extent claimed for them.

After a careful examination of the authorities and much discussion, we are satisfied that the language used by the Judge, in *McClane vs. White*, on page 188 of the case, that parol evidence " cannot be received in a court of equity, except on the ground of fraud, mistake or surprise *in making or executing the instrument*," to show that a deed, absolute on its face, was intended only as a mortgage security, is too restrictive. Courts do interfere where the fraud arises subsequent to the making or execution of the instrument, in the attempt to enforce it in a manner not authorized by the transaction, to the damage and prejudice of the grantor or mortgagor. The language was employed merely *arguendo*, and the point was not necessary to the decision of the case. We make these remarks in qualification of that *dictum*, in order that no misapprehension may result from it, but not in any way to diminish the force of the case as authority upon the points involved.

It is a broad rule of equity, contained in many adjudicated cases, and all the elementary books, that when a deed, absolute upon its face, was in fact only a security for a loan, its real character may be shown by parol, and the rights of the parties adjusted according to the equities of the case. This rule, like all others, is subject to qualification by the operation of other principles equally as well understood. The reason of the rule is, to prevent lenders from taking advantage of the necessities of borrowers, by exacting contracts from which there is no redemption, in case of default to pay. This, equity will not permit, where the least advantage would

accrue from it to the lender, or injury to the borrower. Equity will also interfere where the written evidence of the transaction, through mistake or other sufficient reason, does not disclose its true features, and injury would result. There must always be some injury or damage, however, to the party complaining of the fraud or other mischance to authorize the interference of a court of equity. *Mr. Story, in his Commentaries on Equity, vol.* 1, *sec.* 203, 2d ed., speaking of actual fraud, says :

" In the next place, the party must have been misled to his prejudice or injury ; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations, or correcting unconscientious acts, which are followed by no loss or damage. It has been very justly remarked that, to support an action at law for a misrepresentation, there must be a fraud committed by the Defendant, and a damage resulting from such fraud to the Plaintiff ; and it has been observed with equal truth by a very learned Judge in equity, that fraud and damage coupled together, will entitle the injured party to relief in any court of justice."

I apprehend that to invoke the aid of any Court, a suitor must show that without its intervention he will sustain injury, or in other words that he has some right to enforce, or wrong to redress. Courts will not sit to try and determine questions of merely abstract moment, where no material interests are involved.

Assuming, then, that equity will interfere to declare what purports to be an absolute deed, a mere mortgage security, when such was the real nature of the transaction, we must do. so with the qualification, that such interference will only take place upon the application of a suitor who shows that without it he will sustain damage in some of his material interests.

The transaction set out in the complaint is that of a conditional sale. The answer states facts, showing it to have been of a different nature, but contains no facts which show that its enforcement, as alleged in the complaint, will work any injury to the Defendants, or be in any manner a fraud upon them which will operate to their disadvantage. It is nowhere alleged that the property is of greater value than the sum ad-

vanced by the Plaintiff, or that it possesses any peculiar value
to the Defendants other than its worth in money.   The Coun-
sel contends that it would be a fraud to allow the Plaintiff to
enforce it as a sale, when it can be shown to be a mortgage.
True, it may be a violation of good conscience on the part of
the Plaintiff, to do what he agreed not to do, but we have
shown that equity does not entertain such questions of moral
obligation, unless material interests are involved.   It is of no
possible consequence to this Court whether the Plaintiff has
been guilty of a fraud, unless the Defendants are in some way
injured by it, and it cannot permit an investigation of the fact
unless some injury will result to the Defendants from its per-
petration.   The Defendants are in default whether the trans-
action was a sale or a mortgage.   The most they can ask is
relief from their default, and a right to redeem the land on
payment of the sum due the Plaintiff.   But they ask neither ;
all they demand is that the Plaintiff be turned out of Court.
We do not understand such to be the rule in equity, under
any circumstances.   When the Court obtains jurisdiction of
the parties and the subject matter, it will retain it for the pur-
pose of deciding all the equities involved, whether presented
by the bill or answer.   This was the rule when bills of disco-
very were authorized, and two distinct Courts existed.   It is
much more properly the practice since the consolidation of the
two jurisdictions.   1 *Story's Com. on Equity*, secs. 82 *to* 91,
438 *to* 440.

We think the answer is fatally defective in not alleging
fraud, or facts from which fraud, coupled with some injury to
the Defendants, can be inferred, nor any of the grounds which
call for equitable interference.   The order overruling the
demurrer must be affirmed.   The Defendants may serve an
amended answer within ten days after notice of the order to
be entered upon this decision.